IN THE UNITED STATES DISTRICT COURT OF
THE MIDDLE DISTRICT OF FLORIDA
(ORLANDO DIVISION)

HILTON RESORTS CORPORATION, a Delaware corporation, LV TOWER 52, LLC, a Delaware limited liability company, TUSCANY VILLAGE VACATION SUITES OWNERS ASSOCIATION, INC., a Florida non-profit corporation, ORLANDO VACATION SUITES II CONDOMINIUM ASSOCIATION, INC., a Florida non-profit corporation, LV TOWER 52 CONDOMINIUM ASSOCIATION, INC., a Nevada non-profit corporation, LAS VEGAS BOULEVARD VACATION SUITES OWNERS ASSOCIATION, INC., a Nevada non-profit corporation, LAS VEGAS VACATION SUITES OWNERS ASSOCIATION, INC., a Nevada non-profit corporation, HTLV OWNERS ASSOCIATION, INC., a Nevada non-profit corporation, KT VACATION OWNERS ASSOCIATION, INC., a Hawaii non-profit corporation.

CASE NO.:

        Plaintiffs,

vs.

MITCHELL REED SUSSMAN, an individual,

        Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, HILTON RESORTS CORPORATION, a Delaware corporation, LV TOWER 52, LLC, a Delaware limited liability company, TUSCANY VILLAGE VACATION SUITES OWNERS ASSOCIATION, INC., a Florida non-profit corporation, ORLANDO VACATION SUITES II CONDOMINIUM ASSOCIATION, INC., a Florida non-profit corporation, LV TOWER 52 CONDOMINIUM

ASSOCIATION, INC., a Nevada non-profit corporation, LAS VEGAS BOULEVARD VACATION SUITES OWNERS ASSOCIATION, INC., a Nevada non-profit corporation, LAS VEGAS VACATION SUITES OWNERS ASSOCIATION, INC., a Nevada non-profit corporation, HTLV OWNERS ASSOCIATION, INC., a Nevada non-profit corporation, KT VACATION OWNERS ASSOCIATION, INC. (collectively, "Plaintiffs") file this Complaint against Defendant MITCHELL REED SUSSMAN ("Sussman" or "Defendant"), individually, and state:

## INTRODUCTION

1.      Plaintiffs Hilton Resorts Corporation and LV Tower 52, LLC are in the business of selling vacation ownership interests ("VOIs") in "Hilton Grand Vacations"-branded ("HGV") timeshare properties ("HGV Projects"). They offer mortgages ("Loans") to qualified applicants who express a desire to finance their VOI purchase. The financing terms are clearly disclosed in transaction documents as required by consumer federal financial laws.

2.      At the time of purchase, purchasers agree to pay management and maintenance fees ("Maintenance Fees") associated with their HGV Project VOI. This agreement is reflected in the disclosure documents required by various state laws and signed by purchasers at point of sale.

3.      Mitchell Reed Sussman is an attorney who has engaged in a nationwide scheme of fraud and deception in which he has used his law firm and associates to deceive timeshare owners into paying him large sums of money upfront under the ruse that he has developed a legally permissible way of cancelling or terminating timeshare

interests.  He has not.  Instead, through false advertising and deceptive trade practices Defendant has violated laws specifically designed to prevent the very conduct in which he has engaged.

4.      After luring timeshare owners in either through false statements and empty promises made on his website, or by referrals from timeshare exit companies with similar business models, Defendant advises these timeshare owners to stop communicating with their timeshare developer, including Developer Plaintiffs.

5.      Defendant instructs the timeshare owners who hire him, including owners of VOIs at HGV Projects (the "HGV Owners"), to make no further Loan payments or Maintenance Fee Payments to Plaintiffs, claiming that this will facilitate the cancellation or exit from a timeshare loan agreement.

6.      In truth, giving this instruction only serves to fuel Defendant's business model because it frees up funds that the timeshare owner can now use to pay Defendant's high upfront fees.

7.      Defendant uses his position as 40-year lawyer to deceive timeshare owners into believing he is an alleged expert in timeshare cancellation and has their best interests in mind. Far from it. Defendant's misconduct is aimed at enriching himself at the expense of these owners who, as a direct result of following his guidance, fall into delinquency or default on valid debts and then face foreclosure actions.

8.      Although he claims to use a "proprietary process" that he "pioneered" to obtain timeshare contract cancellation, Defendant performs no individual investigation or analysis on behalf of timeshare owners. Rather, he generates a series of boilerplate letters

that allege numerous, identical violations of law regardless of the individual owner's circumstances and which request only that the timeshare company take back the VOI in exchange for contract cancellation, something which the timeshare owner could easily request themselves.

9.      Knowing that he can convince unwitting HGV Owners that removing their names from property deeds is a "win," Defendant has repeatedly and unlawfully tried to deed timeshare VOIs back to timeshare developers without their knowledge and when that does not work, he pays cash to financially burdened individuals, who have no intention or ability to pay Maintenance Fees and other obligations, in exchange for their willingness to accept property deeds in their own names making them the claimed new owners, which, according to Defendant's theory, relieves HGV Owners of their obligation to pay future Maintenance Fees.

10.     Defendant's fraudulent scheme harms the HGV homeowners associations ("Association Plaintiffs") which cannot continue to maintain, repair, and replace items in the common areas and used by all owners without collection of enough Maintenance Fees.

11.     Defendant's fraudulent scheme directly caused monetary harm to Developer Plaintiffs due to the Loans that go into default after Defendant advises HGV Owners to cease making Loan payments.

## PARTIES

*The Developer Plaintiffs*

12.     HILTON RESORTS CORPORATION (hereinafter "HRC") is a global

timeshare company engaged in developing, marketing, selling, financing, and managing vacation ownership interests ("VOIs") at HGV-branded timeshare resorts. HRC is organized and existing under the laws of the state of Delaware with its principal place of business located in Orlando, Orange County, Florida. HRC is registered as a "Developer" under Chapter 721 Florida Statutes and Nevada Revised Statutes Chapter 119A and the activities engaged in at each of the properties it operates has been authorized under applicable law.

13.     LV TOWER 52, LLC (hereinafter "LV Tower 52"), is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business located in Orlando, Orange County, Florida. LV Tower 52 is engaged in the development, sale, and financing of VOIs. HRC and LV Tower 52 are sometimes collectively referred to in this Complaint as the "Developer Plaintiffs."

*The Association Plaintiffs*

14.     TUSCANY     VILLAGE     VACATION     SUITES     OWNERS ASSOCIATION, INC. (hereinafter "Tuscany Village Owners Association") is a non-profit corporation organized and existing under the laws of the state of Florida with its principal place of business located in Orlando, Orange County, Florida.

15.     ORLANDO VACATION SUITES II CONDOMINIUM ASSOCIATION, INC. (hereinafter "OVS Owners Association") is a non-profit corporation organized and existing under the laws of the state of Florida with its principal place of business located in Orlando, Orange County, Florida.

16.     LV TOWER 52 CONDOMINIUM ASSOCIATION, INC. (hereinafter

"LV Tower Owners Association") is a non-profit corporation organized and existing under the laws of the state of Nevada with its principal place of business located in Las Vegas, Clark County, Nevada.

17.   LAS   VEGAS   BOULEVARD   VACATION   SUITES   OWNERS ASSOCIATION, INC. (hereinafter "LBVS Owners Association") is a non-profit corporation organized and existing under the laws of the state of Nevada with its principal place of business located in Las Vegas, Clark County, Nevada.

18.   LAS VEGAS VACATION SUITES OWNERS ASSOCIATION, INC. (hereinafter "LVVS Owners Association") is a non-profit corporation organized and existing under the laws of the state of Nevada with its principal place of business located in Las Vegas, Clark County, Nevada.

19.   HTLV OWNERS ASSOCIATION, INC. (hereinafter "HTLV Owners Association") is a non-profit corporation organized and existing under the laws of the state of Nevada with its principal place of business located in Las Vegas, Clark County, Nevada.

20.   KT VACATION SUITES OWNERS ASSOCIATION, INC. (hereinafter "KT Owners Association") is a non-profit corporation organized and existing under the laws of the state of Hawaii with its principal place of business located in Honolulu, Honolulu County, Hawaii.   Tuscany Village Owners Association, OVS Owners Association, LV Tower Owners Association, LBVS Owners Association, and LVVS Owners Association, HTLV Owners Association, and KT Owners Association are sometimes collectively referred to herein as the "Association Plaintiffs."

*Defendant*

21.     Defendant is an individual domiciled in Palm Springs, Riverside County, California, and is a citizen of California.  Defendant is an attorney who is licensed to practice in the State of California and operates a law firm named The Law Offices of Mitchell Reed Sussman & Associates ("Sussman Law") in Palm Springs, Riverside County, California.

22.     At all relevant times, Defendant was the owner and operator of a website www.timesharelegalaction.com.

23.     Defendant manages and controls the marketing and advertising for the services he provides, including the marketing and advertising seen on www.legalaction.com.

24.     Defendant's clients come to him either through his website or through referral from timeshare exit companies.

25.     Timeshare exit companies advertise and market the ability to get timeshare owners released from their financial obligations to developers such as Plaintiffs.

26.     Defendant has provided legal representation to individuals who reside in the State of Florida in connection with the individual's VOI.

27.     Defendant has provided legal representation to individuals who, at the commencement of such representation, held a VOI in one or more HGV Projects (the "HGV Owners").

28.     Defendant has provided legal representation to individuals who, at the commencement of such representation, owed a debt to Developer Plaintiffs in association

with their purchase of an HGV VOI.

29.     Sussman Law consists of Defendant Sussman, staff, and various affiliated attorneys, all whom conduct and carry out the fraudulent schemes and unlawful activities set forth herein through a web of other affiliates employed by or paid by Defendant.

30.     Sussman Law is an unincorporated business name that Defendant uses for the law firm business that he conducts in his individual capacity.  Defendant therefore is personally liable for his conduct as well as that of the employees, independent contractors, associates, and agents of Sussman Law, all of whom he directs.

## **JURISDICTION**

31.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because it presents a federal question of whether Defendant engaged in false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

32.     The Court has supplemental subject matter jurisdiction as to related state law and common law causes of action pursuant to 28 U.S.C. § 1367 as they are so related to the federal claim in this action that they form part of the same case or controversy under Article III of the United States Constitution.

33.     This Court has personal jurisdiction over Defendant because this action arises out of and is related to Defendant committing tortious acts in Florida and interfering with contracts in Florida through his electronic, telephonic, and written communications into Florida, and within this District, including, but not limited to: (a) the solicitation of Florida residents through the advertising, and sale, and provision of his

services through Internet, telephonic, and written communications into Florida; (b) the recording of fraudulent deeds by Defendant, or at his direction, in the public records in Florida; (c) the provision of services to Florida residents; and (d) intentional interference with contracts and business relationships formed in, and governed by, the laws of the State of Florida, including:

i. contracts and relationships between Association Plaintiffs in Florida and HGV Owners who are members of the Association Plaintiffs by virtue of their ownership of VOIs at the timeshare projects governed by such Association Plaintiffs, as applicable,

ii. contracts and relationships between Plaintiffs and Florida residents, and

iii. contracts and relationships between Plaintiffs and non-Florida resident HGV Owners of VOIs in timeshare projects located in the State of Florida.

34.    The Court's exercise of personal jurisdiction over Defendant will not violate traditional notions of fair play and substantial justice.

## VENUE

35.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391, because as described above and below, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial number of Plaintiffs' timeshare resort properties are located in this District, and Defendant's conduct giving rise to the claims occurred in, was directed to, and/or caused damage to Plaintiffs in this District.

## GENERAL FACTS

*Plaintiffs' Sale and Management of Timeshare Interests*

36.     The Developer Plaintiffs develop timeshare resorts throughout the country and abroad (each, a "HGV Project" or collectively, "HGV Projects"), and arrange for sales of HGV VOIs at the HGV Projects to interested purchasers.

37.     The Association Plaintiffs are timeshare owners' associations created pursuant to applicable law in the states in which they operate to manage each applicable HGV Project.  Each HGV Project is created by and operates pursuant to a recorded Declaration of Covenants, Conditions and Restrictions (or comparably named document) ("Declaration").  The Declaration governs the rights, responsibilities, and obligations of the Association and of the HGV Owners and also sets forth the obligations of the Board of Directors for each of the Association Plaintiffs.  Each of these Declarations is a covenant running with the land and contains explicit contractual rights and obligations including the obligation of each HGV Owner in an HGV Project to pay, on an annual or biennial and ongoing basis, while they own their VOIs, maintenance fees and assessments to the applicable Association Plaintiff for the management, maintenance, upkeep and repair of the resort properties which comprise each HGV Project.  In addition, pursuant to the Declaration(s), HGV Owners are obligated to pay a pro-rated share of the applicable real estate tax obligations for the HGV Project to the Association Plaintiffs.  The maintenance fees and assessments and the real estate taxes are, together, referred to as "Maintenance Fees."

38.     Each of the Declarations also grant each Developer Plaintiff (as

applicable) a right of first refusal to purchase a VOI if an HGV Owner desires to sell, transfer, assign or hypothecate his VOIs.   The Declaration requires that the HGV Owner notify the applicable Developer Plaintiffs prior to any such transfer.

39.    HGV Owners purchase and acquire fee-simple, deeded interests in real estate at the HGV Project(s), subject to an applicable timeshare use and occupancy plan and the legal regime documents all as described in the state mandated and approved Public Offering Statements, including the Declaration.

40.    All of the HGV Projects developed by the Developer Plaintiffs have annual or biennial use rights, generally in increments of one week.   When purchasing a deeded timeshare interest from Developer Plaintiffs at a particular HGV Project, the owners automatically become members of the applicable owner's association for such HGV Project.  In addition, upon purchase, such HGV Owners become members of the HGVClub which is a points-based internal exchange program that gives the HGV Owner an annual allotment of points.  These points can be used for a priority reservation at the HGV Project the owner initially purchased (the "Home Resort"), to book a stay at a different HGV Project, converted to Hilton Honors® points for use at Hilton branded hotels, or exchanged for numerous and varied other vacation options.

41.    When purchasing VOIs from the applicable Developer Plaintiff, an HGV Owner executes a series of documents (as required by applicable law), including a Purchase Agreement, which the HGV Owner signs to acknowledge, among other provisions:

(a) Developer Plaintiffs' right of first refusal to purchase the VOI should

the HGV Owner decide to sell;

(b) that the HGV Owner may not sell, transfer, assign, or convey his/her VOI without prior written consent of Developer Plaintiffs if a promissory note remains unpaid;

(c) that the HGV Owner is a member of his/her Home Resort's Homeowner's Association ("HOA") and, pursuant to the applicable Declaration(s) which create the timeshare plan for the Home Resort, is responsible for the payment of Maintenance Fees annually which must be timely paid to the HOA's managing entity;

(d) the estimated dollar amount for the Maintenance Fees in the current year; and

(e) that the VOI is not being purchased because of any financial or monetary advantage such as rental income, price appreciation through resale or tax advantage.

42.    Developer Plaintiffs offer mortgage financing to prospective purchasers to assist them in purchasing VOIs at the HGV Projects.

43.    If a purchaser desires to finance their purchase of a VOI, he or she may complete and submit an application to obtain financing as part of the purchase process.

44.    Upon approval, and in connection with the purchase of a VOIs, each person(s) to whom financing is provided executes various additional loan documentation as may be required by applicable law, including:

(a) a HUD-1 Settlement Statement or a Closing Disclosure (depending on

the purchase date), which sets forth details about the mortgage loan, including terms, projected monthly payments, and the amount of closing costs the purchaser must pay;

(b) a Vacation Ownership Interest Promissory Note, which identifies the Loan parties, the interest rate and charges on the Loan, the amount of monthly payments, and the obligations of, and restrictions on, the Loan parties; and

(c) a Mortgage or Deed of Trust, which secures the repayment of the loan.

45.    Plaintiffs HRC and LV Tower are the initial owners and holders of the various respective Promissory Notes they originate.

*Defendant's Misleading and False Advertising and Solicitation*

46.    In addition to advertising and soliciting clients via Internet, Defendant has clients referred to him by known third party Timeshare Exit Companies, which, like Defendant, are entities that solicit owners of timeshare VOIs, including HGV Owners, to retain their services for exorbitant fees upon the empty promise of getting them out of the contractual obligations associated with their timeshare.

47.    Defendant's business model consists of soliciting timeshare owners from all over the country, including HGV Owners, through: (i) his law firm's website, http://timesharelegalaction.com; (ii) various postings on websites such as https://www.youtube.com, https://www.facebook.com, and https://www.newswire.com; and, (iii) referrals from timeshare exit companies.

48.    In order to induce HGV Owners to retain Defendant's legal services,

Defendant advertises that he specializes in "timeshare exit, cancellation and relief for embattled timeshare owners …" and offers a "100% MONEY BACK GUARANTEE." *See* **Exhibit "A."**

49.     Defendant's website boasts that timeshare owners can cancel their contracts even if they have mortgages because of "[t]echniques pioneered by the timeshare consumer advocates from the law office of Mitchell Reed Sussman & Associates …." *See* **Exhibit "B."**

50.     On his website, Defendant posts letters from various timeshare developers and/or owners' associations, including from the Plaintiffs, along with the caption, "To see our successes, click on any of the links from this page and you will see examples of contract cancellations, the result of which was the release of former timeshare owners from their lifetime obligation to pay." *See* **Exhibit "B."**  True and correct copies of the letters posted on Defendant's website for Plaintiffs are attached hereto as **Composite Exhibit "C."**

51.     Defendant posts these letters as "Proof of Performance," purporting to demonstrate how he has successfully negotiated cancellations for his clients.  When, in fact, upon information and belief, Defendant had nothing to do with negotiating the cancellations, or they were obtained prior to Plaintiffs (and other timeshare developers) becoming aware of Defendant's fraudulent scheme, or they were obtained through recording unilateral and fraudulent deeds.

52.     Since becoming aware of Defendant's ongoing fraud, Plaintiffs have not agreed to any cancellations.

53.    Defendant further posts on Sussman Law's Facebook page ("Facebook Page") that "[t]o date we have cancelled 10,000+ timeshares for disgruntled owners no longer interested in the burdens of timeshare ownership."  ***See* Exhibit "D."**  Defendant offers to provide these services for "the all-inclusive fee [of] $950."  *Id.*  Defendant directs visitors to the Facebook Page to visit Sussman Law's website, www.timesharelegalaction.com, where "you will see proofs of performance from virtually every timeshare company on the face of this planet," concealing that those claimed results, if any, were procured by fraudulent, even illegal, means.  ***See* Exhibit "E."**

54.    Defendant's website claims he can obtain the same result for other timeshare owners, regardless of whether there is any legitimate legal basis for the cancellation.   For example, see **Exhibit "F,"** an inquiry regarding cancellation of timeshares owned by the inquiring party's deceased parents, to which Defendant recklessly responds, without knowledge of any specific facts: "Easy . . . we can make this go away.  Call [sic] the office and ask for Steve or Jeff."  Steve and Jeff, Plaintiffs understand, are not attorneys and have no legal or other specialized training.

55.    These websites and Defendant's postings are intended to create false impressions of skill and expertise in performing the services being advertised.

56.    However, the so called "technique" pioneered by Defendant is a fraudulent scheme wherein Defendant instructs timeshare owners, including HGV Owners, to execute fraudulent deeds prepared by or on behalf of Defendant with the false promise that the execution and recording of the deed relieves the timeshare owner of

existing and future contractual obligations.

57.     Defendant conceals that the deeds do not represent real transactions.  The deeds lack any real consideration.  The grantee is either a person or company with no intention to either use or pay for the timeshare, or the developer who has not agreed to accept the conveyance of the timeshare and, most often, has no idea Defendant is doing this.

58.     Defendant frequently hires attorneys in the state in which the timeshare property at issue is located and instructs the local attorneys to prepare and record these fraudulent deeds, even where the timeshare developer has not accepted the deed back.

59.     These bogus deeds do not effectively cancel the transaction nor relieve the HGV Owners of their Loan or Maintenance Fee obligations.

60.     Defendant's marketing and advertising and his advertised practices appear to violate Florida and other state's Bar rules prohibiting, among other things, misleading and incomplete advertising and the unlicensed practice of law, by using timeshare exit companies to directly solicit/contact timeshare owners and then accept referrals from them.

61.     Defendant's advertising and promises to owners are false.  Defendant's use of false and misleading advertising to sell his services, and then deceptive and unfair trade practices once he has been retained, have played a material and substantial part in inducing HGV Owners to cease making Loan or Maintenance Fee payments (as applicable) despite legally enforceable contracts.

*Defendant's Tortious Advice to Stop Making Payments*

62.    Many of the HGV Owners Defendant or his referring timeshare exit companies have misled to engage Defendant were current with their Loan and/or Maintenance Fee payment obligations prior to engaging Defendant.

63.    Defendant's false and misleading advertisements and other communications are designed to cause the HGV Owner to believe that there is a valid factual or legal basis to get such owner out of their Loan or Maintenance Fee obligations with Plaintiffs when in fact there is not.

64.    An integral part of the scheme involves Defendant directly advising and instructing existing and/or potential clients to stop making Loan and Maintenance Fee payments to the Plaintiffs.  Specifically, Plaintiffs believe Defendant directly instructs HGV Owners to stop paying their Loan or Maintenance Fee to justify the payment of the substantial up-front fee charged by Defendant and/or paid to Defendant by the referring timeshare exit company.

65.    This instruction is made without any prompting from the timeshare owners, without reviewing the timeshare owners' Purchase Agreements, Loan Documents, or otherwise conducting any investigation by Defendant of any circumstances which would legally entitle such HGV Owner to cease performance.  All of this conduct on the part of Defendant is in part designed to free up funds that the timeshare owner can now use to pay Defendant's large upfront fee.

66.    Defendant falsely assures the timeshare owners that they will not be responsible for any missed Loan or Maintenance Fee payments and will be able to walk

away free and clear and without any further obligations to Plaintiffs.

67.     Despite Defendant's advice to the contrary, nothing about Defendant's actions relieves timeshare owners of their contractual obligations to make monthly Loan payments or pay Maintenance Fees.

68.     Defendant informs the potential timeshare owner clients that the process will take about six to twelve months and their credit score will temporarily drop only about 50-75 points, which may be resolved by the potential client reaching out to the credit bureaus and providing the credit bureaus with the letters they will be sending the timeshare developers and associations, such as Plaintiffs.

69.     All of the foregoing conduct and actions together with the advertisements made to consumers are blatantly false.  They have been knowingly and willingly made by Defendant for his own unlawful and illegal personal gain.

70.     HGV Owners, not suspecting Defendant's fraud, relied upon these false and deceptive representations, only to have Plaintiffs not cancel their contracts and not forgive their debt, triggering defaults and foreclosures which further harm the HGV Owners.

***Defendant's Extortionate Form Letters of Representation***

71.     Once engaged by the HGV Owner (either directly or through referrals by the associated timeshare exit company affiliations), Defendant regularly sends Plaintiffs form letters on the Sussman Law letterhead.  *See* **Composite Exhibit "G."**  These cookie-cutter, "one-size-fits-all" letters: (1) generically reference "abusive practices including misrepresentations made . . . during the course of your time-share

presentation;" (2) inform Plaintiffs that the client will no longer "be making any further payments including any future or past due maintenance assessments"; and (3) cite to irrelevant and/or inapplicable law such as California's Fair Debt Collection Practices Act.

72.    Defendant sends these pre-drafted form letters on behalf of HGV Owners without conducting any investigation into HGV Owners' individual facts or circumstances.

73.    In nearly all instances, Defendant never even speaks with the HGV Owners he denominates as his "clients," as a significant portion are procured through timeshare exit companies with whom he is affiliated.  Many of the HGV Owners Defendant claims to represent have no actual knowledge of this supposed representation. Nor have many of these HGV Owners authorized Defendant to represent them or to concoct the accusations made in Defendant's demand letters.  Indeed, Defendant acknowledges that when such "clients" contact him, he avoids communications with them on the view that he is not being paid by the referring timeshare exit company for "customer service."

74.    Shortly after or just prior to the time Defendant sends his letters regarding HGV Owners to Plaintiffs, most, if not all, of the HGV Owners, at Defendant's direction and/or with his encouragement, stopped paying their legitimate and enforceable contractual obligations to Plaintiffs.

75.    Defendant recognizes his complicity in inducing the HGV Owners to breach their contracts in his form letters to Plaintiffs, informing Plaintiffs that payments have or will cease. This underscores that Defendant's scheme is designed around this

intentional and unjustifiable interference with Plaintiffs' contractual relationships with the HGV Owners, and that he has made disrupting Plaintiffs' financial relationships with HGV Owners and integral part of his scheme. Indeed, both Defendant and many of the timeshare exit companies referring timeshare owners to Defendant require, despite having no legitimate factual or legal ground for doing so and having conducted no investigation to justify it, that HGV Owners stop making contractually required payments to Plaintiffs. To further induce timeshare owners to stop making payments – in substantial part so they can instead pay the exit fees Defendant and the referral companies charge – Defendant and his referral companies falsely assure timeshare owners that they will be relieved of liability and that that will be no financial consequences of ceasing payments.

### *Defendant's Use of Fraudulent Deeds*

76.    When Defendant fails to obtain cancellation of contracts for HGV Owners as he promised he would, he takes his scheme to another level with the goal of appearing successful to his clients whose large upfront fees he does not want to lose.

77.    Defendant and his associates have the HGV Owners execute deeds purporting to transfer the HGV Owners' respective timeshare interests back to Plaintiff Developers.

78.    The deeds do not result from any negotiation or arms-length transaction. Rather, without the consent, authorization, approval or even knowledge of the intended grantee – here Plaintiff Developers – Defendant falsely recites "$10.00," and in some instances "$500.00," consideration paid by Plaintiffs to Defendant's clients, with

Defendant's clients' falsely acknowledging receipt. *See* **Composite Exhibits "H" and "I."**

79. Plaintiff Developers have never paid any such consideration (cash or otherwise).

80. In truth, Plaintiffs have provided no consideration in exchange for an HGV Owner's timeshare interest referenced in a deed that Defendant prepared and recorded or caused to be prepared and recorded.

81. Defendant never asked for, nor received, approval from Plaintiffs to transfer HGV Owners' timeshare interests to Plaintiffs and record the deed.

82. Nor have Plaintiffs ever willingly accepted transfer of an HGV Owner's timeshare interest which was reflected in a deed prepared and recorded or caused to be prepared and recorded by Defendant.

83. Defendant also attempts to execute his fraudulent scheme by having timeshare owners execute deeds purporting to transfer title to one of a network of individuals associated him and his law firm, the "strawman" transferees.

84. Defendant recruits and pays financially strapped individuals a fee for each deed on which the strawman named grantee. None of the strawman grantees wants or has any use for a timeshare and none commits to honor the financial obligations associated with the ownership of the timeshare interest. In virtually all instances, these strawmen transferees do not, at the time of the transfer, have any intention to do so.

85. Indeed, Defendant recruited these strawmen transferees because he knows that they will not or cannot pay the debt and fees attendant to the timeshare interests

deeded to them.

86.     Defendant portrays his transfers of unwanted timeshare to these "associates" as "a kindness" which he repeatedly confers upon them because the $100 Defendant pays them "helps them pay their food bill, their electric bill, their rent bill, their mortgage, et cetera.  It's a form of income to them.  So, yes, again, I consider it a kindness."

87.     Defendant acknowledges he does "nothing" to ensure that these strawmen grantee have the ability and intent to pay the obligations on the timeshares deeded to them, mainly because Defendant knows they do not, does not care if they pay their obligations, and tells them that they can do what they wish to do with their timeshare obligations.

88.     Prior to the preparation and recording of these deeds, Defendant takes no steps to ensure that the transfer is in compliance with Plaintiffs' right of first refusal with respect to any transfer of a deeded timeshare interest by an HGV Owner.

89.     Plaintiffs have neither sought, requested, negotiated, approved, or accepted the unilateral deed back.

90.     Examples of bogus deed backs to Plaintiffs, recorded in Orange County, Florida and Clark County, Nevada, are included in **Composite Exhibits "H" & "I**." Once Plaintiffs learned of Defendant's fraudulent deed backs, Plaintiffs expressly rejected them by recording Notices of Non-Acceptance of Deed and Non-Compliance with Developer's Right of First Refusal with respect to each such transfer, along with deeds transferring title back to the HGV Owners.  *See* **Composite Exhibit "J."**

91.    Examples of Defendant's strawman deeds, recorded in Orange County, Florida and Clark County, Nevada, are included in **Composite Exhibits "H" & "I."**  In these deeds, Defendant falsely recites the consideration the HGV Owner supposedly received: $10, "the receipt of which is hereby acknowledged."  And more egregiously, Defendant writes that the "straw man" grantee

> hereby assumes and agrees to be bound by and comply with all of the covenants, terms, and provisions set forth in the aforesaid Declaration and the results and regulations made thereunder, including, but not limited to, the obligation to make payment of all assessments as provided for therein.

92.    All the while, Defendant knows that the strawmen recipients of his "kindness" have no intention whatsoever of doing so. Finally, despite his actual knowledge of Plaintiff Developers' right of first refusal, Defendant ignores it.

***Defendant's Bogus "Congratulations" Letters to the HGV Owners***

93.    Once a deed back or strawman deed is recorded, or even merely upon submission of a "notice of resignation" that has no legal basis, the Defendant tells his HGV Owner "clients" that they have been "exited" from their timeshare and relieved of their contractual obligations to Plaintiffs.

94.    Despite knowing that Plaintiffs do not recognize the validity of the attempted unilateral and bogus transfers, Defendant tells the HGV Owners, "[s]ince you are no longer the owner, you are not responsible for future fees in connection with the timeshare."  Copies of this form letter that Defendant universally employs regardless of timeshare developer are attached hereto as **Composite Exhibit "K"**.

95.    But what Defendant is telling HGV Owners and his other "clients" is false: title has not been legally transferred, and HGV Owners still own their timeshares

and remain liable for unpaid debt and maintenance fees. Nor is the "notice of resignation" effective in terminating the HGV Owners' obligations.

96.    Defendant never:

(a)    provides copies of these deeds to Plaintiffs;

(b)    gives notice of the purported transfer of the timeshare interest;

(c)    complies with Plaintiffs' well-known right of first refusal; or

(d)    informs the unsuspecting HGV Owners that they remain liable for the debts associated with their timeshare.

97.    Defendant, knowing that Plaintiffs NEVER accepted nor authorized nor approved the unilateral fraudulent transfers and that Plaintiffs recorded the Notices of Non-Acceptance of Deed and Non-Compliance with Developer's Right of First Refusal, nevertheless repeated a rejected deed back, initiating a game of "hot potato."

98.    Because Defendant never informs his HGV Owner "clients" that what Defendant has done for them is bogus and ineffectual, the HGV Owners' cessation of payments and breach of their contracts continues and is ongoing.

99.    Defendant further keeps the HGV Owners in the dark and causes them to continue to refrain from making payments to Plaintiffs by discarding Loan statements and Maintenance Fee statements directed to HGV Owners and mailed by Plaintiffs to Defendant (as a consequence of his representation and as a consequence of federal and state consumer protection statutes and considerations). Even though these mailings were sent to Defendant as the HGV Owners' purported attorney (and fiduciary), rather than forward them to the HGV Owners, which would reveal the falsity of his claims of

success, he places them in the trash.

100.    Without Defendant's false and deceptive advertising inducing them to retain Defendant, and then Defendant's false promises of success, HGV Owners would not have breached (and continue to breach) their contractual obligations with Plaintiffs. Because Defendant's scheme is surreptitiously carried out, Plaintiffs believe that Defendant is responsible for many more fraudulent transfers and breaches of contractual obligations, so the full scope the scheme is, as yet, unknown.

101.    Defendant's scheme and the conduct described above are continuing and ongoing, and as a result thereof Plaintiffs are suffering irreparable harm on a continuing and ongoing basis, for which there is no adequate remedy at law if Defendant is not enjoined from this conduct.

102.    All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

103.    Plaintiffs have retained the law firm of Greenspoon Marder LLP to represent them in this action and are obligated to pay reasonable attorney's fees and costs incurred herein.

## COUNT I
## FALSE ADVERTISING AND UNFAIR COMPETITION
## UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

104.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 103 above as if more fully set forth herein.

105.    This is a cause of action for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and is within this Court's jurisdiction.

106. Plaintiffs are engaged in commerce within the control of Congress because they have a cognizable commercial interest in sales and fall within the zone of interest protected by 15 U.S.C. § 1125(a). Defendant's advertised "timeshare relief" services travel in interstate commerce.

107. Defendant purposefully inserts himself into the same marketplace in which Plaintiffs operate, the timeshare industry consisting of existing and prospective timeshare owners. Defendant's false advertising is directed both to Plaintiffs' existing client base and to prospective owners

108. Defendant has solicited the HGV Owners through false and misleading advertising which induce the HGV Owners to unilaterally breach their contracts with Plaintiffs without any factual or legal basis whatsoever, and which falsely induce them to stop making payments to Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay.

109. Defendant thus advertises to Plaintiffs' existing client base in order to persuade them to do business with Defendant instead of with Plaintiffs, and to withhold trade and divert monies due and owing to Plaintiffs under the HGV Owners' contractual obligations instead to Defendant. The HGV Owners are falsely told about a cancellation process that can get every HGV Owner out of their timeshare contract without any impact to their credit and no tax consequences, when Defendant knows that: (1) there is no legitimate basis for cancellation, and (2) his practice of preparing and recording fraudulent deeds does not relieve HGV Owners of their contractual obligations to

Plaintiffs.

110.    Defendant substantially injured Plaintiffs' commercial interests by leading HGV Owners to believe, through the false statements of the nature and quality of his purported services, that they would soon be able to avoid their contractual obligations to Plaintiffs and thus should cease making those payments and divert moneys to Defendant instead as a result.

111.    Defendant's statements and resulting implications, described above, are not only literally false, but also are misleading when considered in their full context.

112.    These statements and implications cause HGV Owners to withhold trade from Plaintiffs through the form of HGV Owners stopping payment on Loans and Maintenance Fees, leading to direct and proximate financial harm to Plaintiffs.

113.    Defendant's website advertising, which results in HGV Owners withholding trade from Plaintiffs includes, but is not limited to, false statements and implications that:

(a)    Defendant is able to get every HGV Owner out of their timeshare contract without any impact to their credit and no tax consequences;

(b)    Timeshare companies, including Plaintiffs, have become "more agreeable to releasing timeshare owners from their timeshare obligations" due to the "techniques" Defendant has "pioneered"; and

(c)    Defendant's practice of preparing and recording (fraudulent) deeds relieves HGV Owners of their contractual obligations to Plaintiffs.

114.    As a result of this false and misleading advertising and these

misrepresentations, HGV Owners are deceived into withholding the money they would otherwise pay to Plaintiffs to keep their Loan and Maintenance Fees current and using that money to pay Defendant, or his agents, to obtain an illusory result.

115.    In reality, Plaintiffs have not agreed to relieve HGV Owners from their contractual obligations as a result of Defendant's actions and the fraudulent deeds prepared and recorded by or on behalf of Defendant only serve to place the HGV Owners' financial obligations in default with Plaintiffs and, to add insult to injury, further attempts to deprive HGV Owners of their interest in real property.

116.    Defendant's practices deceived, or had the capacity to deceive, HGV Owners, thereby having a material effect on HGV Owners actions, resulting in the aforementioned damages to Plaintiffs.

117.    The actions of Defendant have been willful and make this case exceptional under 15 U.S.C. § 1117(a).

118.    By this action, Plaintiffs seek the following specific injunctive relief:

A.    Enjoining Defendant, his agents, servants, employees, attorneys and those persons in active concert or participation with Defendant from engaging in false advertising; and engaging in deceptive, misleading, and unfair trade practices relating to Plaintiffs.

B.    Requiring that Defendant take down and destroy all false, misleading, and deceptive material relating to Plaintiffs found on Defendant's websites and found in any marketing material or documentation Defendant produced or used;

      C.     Directing Defendant to file with this Court and serve on Plaintiffs within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction; and

      D.     Requiring Defendant to provide notice of such injunction by posting the Order on Defendant's commercial websites.

**WHEREFORE**, Plaintiffs respectfully demand judgment in their favor and against Defendant, MITCHELL REED SUSSMAN, and request temporary and permanent injunctive relief, compensatory damages, special damages, lost profits, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

<u>**COUNT II**</u>
**DECLARATORY JUDGMENT**

119.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 103 above as if more fully set forth herein.

120.    Plaintiff brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

121.    An actual and justiciable controversy currently exists between Plaintiffs and Defendant regarding the fraudulent deeds Defendant continues to prepare and record on behalf of HGV Owners despite Plaintiffs' continuously advising Defendant that the deeds have not been authorized, approved or accepted by Plaintiffs and therefore the HGV Owners remain the legal owners of the timeshares and liable to Plaintiffs for their contractual obligations.

122.    Defendant continues to prepare and record fraudulent deeds, continues to

solicit others to prepare and record fraudulent deeds on Defendant's behalf, and continues to misrepresent to the HGV Owners the legal significance of these deeds and notices of resignation, for the purpose and with the intention of harming Plaintiffs.

123.    Plaintiffs have suffered substantial harm as a direct and proximate cause of the fraudulent deeds prepared and recorded by Defendant or at Defendant's direction. Specifically, Plaintiffs have been damaged in the amounts due and owing to them by virtue of the HGV Owners' halting their payment due under their Loan or Maintenance Fee obligation at the instruction of Defendant due to the execution and recording of fraudulent deeds which are prepared by or on behalf of Defendant.

124.    Defendant's practice of preparing and recording fraudulent deeds and/or soliciting others to prepare and record fraudulent deeds on Defendant's behalf, purporting to transfer a HGV Owner's VOIs back to Plaintiffs or to a "straw man" without obtaining Plaintiffs' authorization, approval and acceptance, and submitting "notices of resignation" is invalid and of no legal effect and therefore the HGV Owners remain the legal owners of their timeshares and liable for all contractual obligations owed to Plaintiffs in relation thereto.

125.    Accordingly, Plaintiffs seek a declaration from the Court that Defendant's above described practices are invalid and of no legal effect and do not: (1) lawfully transfer title of the VOIs from the HGV Owners to Plaintiffs, or a third party; or (2) relieve the HGV Owners of their contractual obligations to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully demand judgment in their favor and against Defendant, MITCHELL REED SUSSMAN, and request the Court to declare the

following:

A.    Defendant's practice of preparing and recording fraudulent deeds which purport to transfer title of timeshare interests from HGV Owners to Plaintiffs or to a third party without Plaintiffs' knowledge, approval or acceptance and/or submitting notices of resignation is invalid and of no legal effect;

B.    The HGV Owners remain the legal owners of their timeshares and liable for any contractual obligations owed to Plaintiffs; and

C.    For such additional and further relief this Court deems just and proper.

## COUNT III
## VIOLATION OF FLA. STAT. § 817.535

126.    HRC, Tuscany Village Owners Association, and OVS Owners Association (hereinafter the "Florida Plaintiffs") reallege and reincorporate the allegations contained in paragraphs 1 through 103 above as if more fully set forth herein.

127.    This is an action for violation of Section 817.535, Florida Statutes. Section 817.535 provides:  "[a] person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree, punishable as provided in s.775.082, s.775.083, or s.775.084."

128.    Section 817.535(8) specifically provides the Florida Plaintiffs with a civil cause of action.

129.    Defendant solicits others, including licensed Florida attorneys, to review,

prepare and record fraudulent deeds in Florida, on Defendant's behalf, to provide to the HGV Owners as Proof of Performance with the false advice that the mere recording of such deeds is effective in both transferring title of the VOIs back to the Florida Plaintiffs or a third party and relieving the HGV Owners of their contractual obligations to the Florida Plaintiffs.

130.    Defendant has the fraudulent deeds prepared and recorded for the purpose of defrauding the HGV Owners as well as the Florida Plaintiffs.

131.    The fraudulent deeds falsely state that the Florida Plaintiffs have paid ten dollars to the grantors, receipt of which has been acknowledged, when in fact, the Florida Plaintiffs have not paid any funds to the grantors, have no knowledge of the deeds, and have neither authorized, approved or accepted the deeds.

132.    Defendant has the fraudulent deeds prepared and recorded in Florida with the knowledge that the Florida Plaintiffs are not aware of the deeds, have not authorized or accepted the deeds, and are therefore ineffective in transferring title, yet Defendant falsely instructs the Hilton Owners that as a result of recording the deeds, they no longer own the timeshares and no longer have to pay their contractual obligations to the Florida Plaintiffs, causing damages.

133.    Contemporaneous with the filing of this Complaint, the Florida Plaintiffs have filed Notices of Lis Pendens specifically describing the instruments under challenge and the real or personal property affected by the instruments that the Florida Plaintiffs are currently aware of, which does not include every fraudulent deed recorded by or on behalf of Defendant in Florida affecting the Florida Plaintiffs.

134.    Florida Plaintiffs have further attached copies of the fraudulent deeds they are currently aware of that were prepared and/or recorded by or on behalf of Defendant in Florida. *See* **Composite Exhibit "H."**  However, the Florida Plaintiffs believe there are additional fraudulent deeds prepared and/or recorded by or on behalf of Defendant which they have not yet been made aware of and are subject to this action.

**WHEREFORE,** the Florida Plaintiffs respectfully request this Court to:

A.    Enter a preliminary injunction finding Defendant, MITCHELL REED SUSSMAN, in violation of Fla. Stat. § 817.535(2) and enjoining Defendant, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with Defendant be forthwith preliminarily and permanently enjoined from:

a.    Filing or directing any person to file an instrument in Florida's official records purporting to transfer title of a timeshare from a Hilton Owner to Florida Plaintiffs or a third party, without prior review and approval for filing by a circuit or county court judge.

B.    Enter a permanent injunction after trial in favor of the Florida Plaintiffs and enjoining Defendant, MITCHELL REED SUSSMAN, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with them from:

a.    Filing or directing any person to file an instrument in Florida's official records purporting to transfer title of a timeshare from a Hilton Owner to Florida Plaintiffs or a third party, without prior

review and approval for filing by a circuit or county court judge.

C.      Enter an Order that Defendant, MITCHELL REED SUSSMAN, be required to pay the Florida Plaintiffs a civil penalty of $2,500.00 for each instrument determined to be in violation of § 817.535(2);

D.      Enter an Order that all fraudulent deeds recorded on behalf of Defendant, MITCHELL REED SUSSMAN, are void in their entirety and order the fraudulent deeds sealed from the official records and removed from any electronic database used for indexing or locating instruments in the official records;

E.      Enter judgment for the Florida Plaintiffs on this claim against Defendant, MITCHELL REED SUSSMAN, declaring that Defendant violated Fla. Stat. § 817.535(2);

F.      Enter judgment for the Florida Plaintiffs and against Defendant, MITCHELL REED SUSSMAN, awarding actual and punitive damages and attorneys' fees and costs pursuant to Fla. Stat. § 817.535(8)(b)(2; and

G.      Enter any and all other appropriate relief as the Court deems just and proper.

<u>**COUNT IV**</u>
**VIOLATION OF FLA. STAT. § 721.17**

135.    Tuscany Village Owners Associations and OVS Owners Association (hereinafter the "Florida Associations") reallege and reincorporate the allegations contained in paragraphs 1 through 103 above as if more fully set forth herein.

136.    This is an action for a violation of § 721.17, Florida Statutes.

137.    Defendant provides consumer timeshare transfer services as defined by § 721.05(52), Florida Statutes.

138.    The Florida Associations are the managing entities as defined by § 721.05(22).

139.    135.    Section 721.17(3)(e) provides, "[n]o person shall participate, for consideration or with the expectation of consideration, in a plan or scheme, a purpose of which is to transfer a consumer resale timeshare interest to a transferee that the person knows does not have the ability, means, or intent to pay all assessments and taxes associated with the consumer resale timeshare interest."

140.    Defendant instructs the HGV Owners to execute fraudulent deeds that are prepared by Defendant or on Defendant's behalf, which were not requested, authorized or accepted by the Florida Associations or other Plaintiffs, purporting to transfer the HGV Owners' respective VOIs to an individual serving as a "straw man" (who in some cases is believed to be in Defendant's employ), who Defendant knows does not have the ability, means, or intent to pay all Maintenance Fees associated with the HGV Owners' VOIs.

141.    As a result of Defendant's actions described above, the Florida Associations have suffered damages.

142.    Pursuant to § 721.17(3)(g), the Florida Associations are entitled to actual damages and their reasonable attorney fees and court costs.

WHEREFORE, the Florida Associations respectfully demand judgment in their favor and against Defendant, MITCHELL REED SUSSMAN, and request actual damages, attorneys' fees and costs, injunctive relief, and such additional and further relief

this Court deems just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

143.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 103 above as if more fully set forth herein.

144.    This is a cause of action for tortious interference with existing contracts and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

145.    Plaintiffs have valid and legally enforceable contracts with HGV Owners relating to the HGV Owners' VOIs.

146.    As outlined above, Defendant has knowledge of those relationships.  The very fact that Plaintiffs have contracts with the HGV Owners is the basis under which Defendant sought to establish a relationship with the HGV Owners.

147.    After the HGV Owners retain Defendant, he assures the HGV Owners that the matter has been resolved and their contracts with Plaintiffs have been cancelled. Defendant accomplishes this by, among other things, providing the HGV Owners with a fraudulent deed purporting to transfer the VOIs back to Plaintiffs or to a "straw man." Defendant's actions give the HGV Owners the false impression that they have been relieved of their contractual obligations, when in fact his advice to them that they no longer need make any further payments causes them to breach those contractual obligations that remain in place.  According to the false representations made by Defendant, the mere recording of the fraudulent deed relieves the HGV Owners of liability for payments owed to Plaintiffs.

148.    Defendant further perpetuates his scheme of deceiving HGV Owners to believe he has succeeded in relieving them of their obligations to Plaintiffs and causing them to cease making payments to Plaintiffs by discarding Loan statements and Maintenance Fee statements directed to HGV Owners and mailed by Plaintiffs to Defendant (as a consequence of his representation and as a consequence of federal and state consumer protection statutes and considerations).  Even though these mailings were sent to Defendant as the HGV Owners' purported attorney (and fiduciary), he does not cause them to be forwarded to the HGV Owners, keeping them in the dark that Plaintiffs have not accepted the purportedly successful schemes that Defendant falsely claims to have pioneered and lead to great success.

149.    As a direct and proximate result of Defendant's intentional and unjustified interference with Plaintiffs' contractual and advantageous business relationships with the HGV Owners, Plaintiffs have been damaged.

150.    Defendant has intentionally and without justification or privilege, and through fraudulent means, interfered with Plaintiffs' existing contracts by compelling HGV Owners to immediately stop making any further payments under their contracts without any legal basis; and by inducing other attorneys to review, prepare and record fraudulent deeds on Defendant's behalf to cause further breach of the existing contracts.

151.    Defendant's actions were not made in good faith, but were made for purely selfish and mercenary reasons so as to earn and retain the large pre-paid retainer fee without actually providing any meaningful, legally valid services to the HGV Owners and were made with the knowledge and purpose to injure Plaintiffs or with reckless

disregard for the attendant consequences naturally, directly, and proximately resulting from Defendant's actions and without reasonable grounds for Defendant to believe that his actions were justified and proper.

152.    As a direct and proximate result of Defendant's intentional misconduct, HGV Owners have breached, or have otherwise sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

153.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages, and if Defendant's conduct is not enjoined, will continue to suffer injury for which relief at law is inadequate.

**WHEREFORE**, Plaintiffs respectfully demand judgment in their favor and against Defendant, MITCHELL REED SUSSMAN, and request compensatory damages, special damages, punitive damages, injunctive relief, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

### COUNT VI
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq*.

154.    Florida Plaintiffs (also hereinafter referred to as the "FDUTPA Plaintiffs") reallege and reincorporate the allegations contained in paragraphs 1 through 103 above as if more fully set forth herein.

155.    This is a cause of action for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, et seq. ("FDUTPA"), against Defendant, including unfair methods of competition, unconscionable acts and practices, and unfair and deceptive practices in the conduct of trade or commerce.

156. Defendant is engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8), Florida Statutes.

157. The FDUTPA Plaintiffs are "interested part[ies] or person[s]" as defined by Section 501.203(6), Florida Statutes.

158. A temporary injunction is a viable form of relief in a FDUPTA claim such as this one.

159. Defendant engages in unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices.

160. Defendant purposefully inserts himself into the same marketplace in which Plaintiffs operate – the timeshare industry consisting of existing and prospective timeshare owners. Defendant's false and misleading advertisements are directed both to the FDUTPA Plaintiffs' existing client base and to prospective owners.

161. Defendant advertises to the FDUTPA Plaintiffs' existing client base in order to persuade them to do business with Defendant instead of with Plaintiffs, and to divert monies due and owing to the FDUTPA Plaintiffs instead to Defendant. As to prospective owners, Defendant's advertising pollutes the marketplace and discourages prospective owners from seeking to do business with FDUTPA Plaintiffs.

162. Defendant's unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices, include the following:

        A.    Defendant solicits HGV Owners through false and misleading advertising, subsequently induces the HGV Owners to unilaterally breach their contracts without any factual or legal basis or reason

whatsoever, and falsely induces them to stop making payments to the FDUTPA Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay.

B.   Defendant advertises on his website that he has pioneered a technique which has resulted in "timeshare companies," including Plaintiffs, becoming more agreeable to releasing timeshare owners from their timeshare obligations," when in fact the "technique" is nothing more than a fraudulent scheme which fails to accomplish the promised cancellation of timeshare contracts or the financial obligations owed in relation thereto.

C.   Defendant advertises on his website that he has cancelled 10,000+ timeshares when in fact the cancellations are not effective because they are based upon the execution and recording of fraudulent deeds.

D.   Defendant posts letters on his website in order to show that he has successfully obtained cancellations with timeshare developers and associations, including Hilton Resorts Corporation, and can continue to do so, when the cancellations were obtained without any involvement from Defendant, were obtained prior to Plaintiffs and the other timeshare entities becoming aware of Defendant's fraudulent scheme or were otherwise obtained through the use of

fraudulent deeds.  As a result, the letters are misleading and falsely portray that Defendant is able to successfully obtain cancellations for his clients.

E. Defendant solicits others, including licensed Florida and Nevada attorneys through deceptive means and induces them to review and record fraudulent deeds to provide to HGV Owners as Proof of Performance with the false advice to the HGV Owners that the mere execution and recording of such deeds is effective in relieving the HGV Owners of their contractual obligations to the FDUTPA Plaintiffs.

F. Defendant continues to solicit others, including attorneys to review and record fraudulent deeds on Defendant's behalf, despite being placed on notice by the FDUTPA Plaintiffs that they have neither accepted nor approved the fraudulent deeds and are therefore not effective in relieving the HGV Owners of their contractual obligations to the FDUTPA Plaintiffs - and is misrepresenting to the HGV Owners regarding the same; and as a result, there is a strong likelihood the FDUTPA Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Defendant's unfair, deceptive, and fraudulent conduct is inadequate since Defendant continues to engage in such unfair, deceptive and fraudulent behavior.

G.    Defendant further misrepresents to the HGV Owners that the timeshare matter has been resolved even though it was not, leading the HGV Owners to falsely believe that they have been relieved of their contractual obligations to make payments to the FDUTPA Plaintiffs.

163.    Defendant knew or should have known that the above statements were false. Defendant intended that the above statements would induce another to rely and act on them, and specifically, consumers such as the HGV Owners.

164.    Defendant's misrepresentations constitute unfair and deceptive trade practices, in that his conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike.

165.    Defendant's actions constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation and the known concealment and misrepresentation of material facts, all in violation of FDUTPA.

166.    As a result of Defendant's unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices, as outlined above, the consumer HGV Owners have been damaged. The HGV Owners are falsely led to believe that if they do business with Defendant, the HGV Owners will be relieved of any further financial obligation to the FDUTPA Plaintiffs. In reality, the HGV Owners' outstanding financial obligations place them in default with the FDUTPA Plaintiffs.

167.    As a direct and proximate result of Defendant's unfair competition,

unconscionable acts and practices, and unfair and deceptive acts and practices, as outlined above, aimed at consumers in the timeshare marketplace, the FDUTPA Plaintiffs have suffered substantial injury since Defendant's conduct has falsely induced HGV Owners to stop making payments to the FDUTPA Plaintiffs even though they are required to do so by legally enforceable contracts. The FDUTPA Plaintiffs have been damaged in the amounts due and owing to them by virtue of the HGV Owners halting their payment of mortgage, maintenance, and/or tax payments at the instruction of Defendant.

168.    Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, the FDUTPA Plaintiffs are entitled to damages, attorney's fees, and costs.

**WHEREFORE,** the FDUTPA Plaintiffs respectfully request this Court:

A.    Enter a preliminary injunction finding Defendant, MITCHELL REED SUSSMAN, engaged in false advertising and enjoining Defendant, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with Defendant be forthwith preliminarily and permanently enjoined from:

    a.    Engaging in false and misleading advertising and representations;

    b.    Engaging in deceptive and unfair trade practices; and

    c.    Engaging attorneys to prepare and record fraudulent deeds on Defendant's behalf.

B.    Enter a permanent injunction after trial in favor of the FDUTPA Plaintiffs and enjoining Defendant, MITCHELL REED SUSSMAN, his directors,

officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with them from:

a.    Engaging in false and misleading advertising and representations;

b.    Engaging in deceptive or unfair trade practices; and;

c.    Engaging attorneys to prepare and record fraudulent deeds on Defendant's behalf.

C.    Enter an Order that Defendant, MITCHELL REED SUSSMAN, be required to deliver-up (take-down) and destroy all false, misleading, and deceptive material found on the Defendant's website(s) and found in any marketing material or documentation Defendant produced or is using, and record in Florida public records documentation sufficient to nullify all of the fraudulent deeds recorded on behalf of HGV Owners;

D.    Enter an Order that Defendant, MITCHELL REED SUSSMAN, be directed to file with this Court and serve on the FDUTPA Plaintiffs within fifteen days after the service of an injunction a report, in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

E.    Enter an Order requiring Defendant, MITCHELL REED SUSSMAN, to provide notice of the injunction by posting the Order on his website(s);

F.    Enter judgment for the FDUTPA Plaintiffs on this claim against Defendant, MITCHELL REED SUSSMAN, declaring that Defendant violated FDUTPA;

G.    Enter judgment for actual damages for violation of FDUTPA pursuant to Section 501.211(2), Fla. Stat., money damages, punitive damages, and an award of attorneys' fees and costs pursuant to Sections 501.211(2) and 501.2105, Fla. Stat.; and

H.    Enter any and all other appropriate relief as the Court deems just and proper.

## COUNT VII
## VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT - NRS 598.0903, *et. seq.* AND NRS 41.600

169.    HRC, LV Tower 52, LV Tower Owners Association, LBVS Owners Association, LVVS Owners Association, and HTLV Owners Association (hereinafter the "NDTPA Plaintiffs") reallege and reincorporate the allegations contained in paragraphs 1 through 103 above as if more fully set forth herein.  LV Tower Owners Association, LBVS Owners Association, LVVS Owners Association, and HTLV Owners Association are sometimes separately referred to herein as the "Nevada Associations."

170.    This is a cause of action for violations of the Nevada Deceptive Trade Practices Act - NRS 598.0903, et. seq. ("NDTPA") and NRS 41.600, against Defendant, including unfair methods of competition, unconscionable acts and practices, unfair and deceptive practices and consumer fraud in the conduct of trade or commerce.

171.    Defendant purposefully inserts himself into the same marketplace in which the NDTPA Plaintiffs operate – the timeshare industry consisting of existing and prospective timeshare owners.  Defendant's false and misleading advertisements are directed both to NDTPA Plaintiffs' existing client base and to prospective owners.

172.    Defendant advertises to the NDTPA Plaintiffs' existing client base in order to persuade them to do business with Defendant instead of with the NDTPA Plaintiffs, and to divert monies due and owing to the NDTPA Plaintiffs instead to Defendant.  As to prospective owners, Defendant's advertising pollutes the marketplace and discourages prospective owners from seeking to do business with the NDTPA Plaintiffs.

173.    Defendant's unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices, include the following:

A.    Defendant has solicited HGV Owners through false and misleading advertising and subsequently induces HGV Owners to unilaterally breach their contracts without any factual or legal basis or reason whatsoever, and falsely induces them to stop making payments to the NDTPA Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay.

B.    Defendant advertises on his website that he has pioneered a technique which has resulted in "timeshare companies," including Plaintiffs, "becoming more agreeable to releasing timeshare owners from their timeshare obligations," when in fact the "technique" is nothing more than a fraudulent scheme which fails to accomplish the promised cancellation of timeshare contracts or the financial obligations owed in relation thereto.

C.     Defendant advertises on his website that he has cancelled 10,000+ timeshares when in fact the cancellations are not effective because they are based upon the execution and recording of fraudulent deeds.

D.     Defendant posts letters on his website in order to show that he has successfully obtained cancellations with timeshare developers and associations, including Hilton Resorts Corporation, and can continue to do so, when in fact the cancellations were obtained without any involvement from Defendant, were obtained prior to the timeshare entities becoming aware of Defendant's fraudulent scheme or were otherwise obtained through the use of fraudulent deeds.  As a result, the letters are misleading and falsely portray that Defendant is able to successfully obtain cancellations for his clients.

E.     Defendant solicits attorneys through deceptive means and induces them to review and record fraudulent deeds to provide to HGV Owners as Proof of Performance with the false advice to the HGV Owners that the mere execution and recording of such deeds is effective in relieving the HGV Owners of their contractual obligations to the NDTPA Plaintiffs.

F.     Defendant continues to engage others, including attorneys to review and record fraudulent deeds on Defendant's behalf, despite being placed on notice by the NDTPA Plaintiffs that they have neither accepted nor approved the fraudulent deeds and are therefore not effective in relieving the HGV Owners of their contractual obligations to the NDTPA

Plaintiffs - and is misrepresenting to the HGV Owners regarding the same; and as a result, there is a strong likelihood the NDTPA Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Defendant's unfair, deceptive, and fraudulent conduct is inadequate since Defendant continues to engage in such unfair, deceptive and fraudulent behavior.

G.      Defendant further misrepresents to the HGV Owners that the timeshare matter has been resolved even though it was not, leading the HGV Owners to falsely believe that they have been relieved of their contractual obligations to make payments to the NDTPA Plaintiffs.

174.    In addition, NRS 119A.720 provides that any person "who knowingly participates, for consideration or with the expectation of consideration, in any plan or scheme, a purpose of which is to transfer a previously sold time share to a transferee who does not have the ability, means or intent to pay all assessments and taxes for that time share commits a false, misleading or deceptive act or practice for the purposes of …NRS 598.0915 to 598.0925, inclusive, and chapters 598A … of NRS."

175.    Defendant instructs the HGV Owners to execute fraudulent deeds that are prepared on Defendant's behalf, purporting to transfer the HGV Owners' respective VOIs to an individual serving as a "straw man" (who in some cases is one of Defendant's employees), who Defendant knows does not have the ability, means, or intent to pay all assessments and taxes owed to the NDTPA Plaintiffs.

176.    Defendant also knows that the NDTPA Plaintiffs do not have the intent to

pay all assessments and taxes associated with the HGV Owners' timeshares that he purports to transfer back to the NDTPA Plaintiffs as he never informs them of the purported transfers, either before or after recording the deeds. The NDTPA Plaintiffs have no reason to believe they are responsible for the assessments and taxes for timeshare interests that are the subjects of these deeds, which are legally ineffective and fail to comply with right of first refusal requirements.

177.    Defendant's misrepresentations constitute unfair and deceptive trade practices, in that his conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike.

178.    Defendant's actions constitute unconscionable commercial practices, deception, consumer fraud, false pretenses, misrepresentation and the known concealment and misrepresentation of material facts, all in violation of NDTPA.

179.    As a result of Defendant's unfair competition, unconscionable acts and practices, consumer fraud and unfair and deceptive acts and practices, as outlined above, the consumer HGV Owners have been damaged. The HGV Owners are led to believe that if they do business with Defendant, the HGV Owners will be relieved of any further financial obligations to the NDTPA Plaintiffs. In reality, the HGV Owners' outstanding financial obligations place them in default with NDTPA Plaintiffs.

180.    As a direct and proximate result of Defendant's unfair competition, unconscionable acts and practices, consumer fraud and unfair and deceptive acts and practices, as outlined above, aimed at consumers in the timeshare marketplace, the

NDTPA Plaintiffs have suffered substantial injury since Defendant's conduct has falsely induced HGV Owners to stop making payments to Nevada Associations even though they are required to do so by legally enforceable contracts. The NDTPA Plaintiffs have been damaged in the amounts due and owing to them by virtue of the HGV Owners halting their payment of maintenance and/or tax payments at the instruction of Defendant.

181.   Pursuant to NRS 41.600(3), the NDTPA Plaintiffs are entitled to actual damages, equitable relief and attorney's fees and costs.

**WHEREFORE,** the NDTPA Plaintiffs respectfully request this Court to:

A.   Enter a preliminary injunction finding Defendant, MITCHELL REED SUSSMAN, engaged in false advertising and enjoining Defendant, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with Defendant be forthwith preliminarily and permanently enjoined from:

a.   Engaging in false and misleading advertising and representations;

b.   Engaging in deceptive and unfair trade practices;

c.   Soliciting attorneys to prepare and record fraudulent deeds on Defendant's behalf; and

d.   Preparing and recording fraudulent deeds.

B.   Enter a permanent injunction after trial in favor of the NDTPA Plaintiffs and enjoining Defendant, MITCHELL REED SUSSMAN, his directors, officers, shareholders, attorneys, agents, servants, employees, and any

other persons in active concert or participation with them from:

a.      Engaging in false and misleading advertising and representations;

b.      Engaging in deceptive or unfair trade practices;

e.      Soliciting attorneys to prepare and record fraudulent deeds on Defendant's behalf; and

c.      Preparing and recording fraudulent deeds.

C.      Enter an Order that Defendant, MITCHELL REED SUSSMAN, be required to deliver-up (take-down) and destroy all false, misleading, and deceptive material found on the Defendant's website(s) and found in any marketing material or documentation Defendant produced or is using, and record in Nevada public records documentation sufficient to nullify all of the fraudulent deeds recorded on behalf of HGV Owners;

D.      Enter an Order that Defendant, MITCHELL REED SUSSMAN, be directed to file with this Court and serve on the NDTPA Plaintiffs within fifteen days after the service of an injunction a report, in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

E.      Enter an Order requiring Defendant, MITCHELL REED SUSSMAN, to provide notice of the injunction by posting the Order on his website(s);

F.      Enter judgment for the NDTPA Plaintiffs on this claim against Defendant, MITCHELL REED SUSSMAN, declaring that Defendant violated NDTPA;

G.     Enter judgment for actual damages for violation of NDTPA, money damages, equitable relief, and an award of attorneys' fees and costs pursuant to NRS 41.9600(3); and

H.     Enter any and all other appropriate relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury to all issues so triable.

DATED:  February 14, 2019                    GREENSPOON MARDER LLP

                                             By: _____*/s/ Richard W. Epstein*_____
                                             RICHARD W. EPSTEIN
                                             (Trial Counsel)
                                             Florida Bar No. 229091
                                             JEFFREY A. BACKMAN
                                             Florida Bar No. 662501
                                             ROY TAUB
                                             Florida Bar No. 116263
                                             201 East Pine St, Suite 500
                                             Orlando, Florida 32801
                                             Telephone:  (407) 425-6559

                                             and

                                             200 E. Broward Blvd., Suite 1800
                                             Ft. Lauderdale, FL  33301
                                             Telephone:  (954) 491-1120
                                             richard.epstein@gmlaw.com
                                             maria.salgado@gmlaw.com
                                             jeffrey.backman@gmlaw.com
                                             khia.joseph@gmlaw.com
                                             roy.taub@gmlaw.com
                                             cheryl.cochran@gmlaw.com

                                             *Attorneys for Plaintiffs*