**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HILTON RESORTS CORPORATION, LV TOWER 52, LLC, TUSCANY VILLAGE VACATION SUITES OWNERS ASSOCIATIONS, INC., ORLANDO VACATION SUITES II CONDOMINIUM ASSOCIATION, INC., LV TOWER 52 CONDOMINIUM ASSOCIATION, INC., LAS VEGAS BOULEVARD VACATION SUITES OWNERS ASSOCIATION, INC., LAS VEGAS VACATION SUITES OWNERS ASSOCIATION, INC., HTLV OWNERS ASSOCIATION, INC. and KT VACATION OWNERS ASSOCIATION, INC.,

        Plaintiffs,

v.                                      Case No: 6:19-cv-305-Orl-40DCI

MITCHELL REED SUSSMAN,

        Defendant.
_____/

## **ORDER**

This cause comes before the Court without oral argument upon Defendant Mitchell Reed Sussman's Motion to Dismiss (Doc. 23 (the "**Motion**")) and Plaintiffs' Response in Opposition (Doc. 24). With briefing complete, the Motion is ripe. Upon consideration, the Motion is due to be granted in part and denied in part.

I.  **BACKGROUND**[1]

This action is one of many recent suits brought against Defendant Mitchell Reed Sussman by timeshare companies based on alleged false advertising and deceptive trade practices. Plaintiffs are affiliated businesses that sell, service, and maintain ownership stakes in "Hilton Grand Vacations" branded timeshare properties. (Doc. 1, ¶¶ 1, 36–41). Plaintiffs offer mortgage financing to purchasers of timeshare interests and initially hold promissory notes executed in connection with mortgaged timeshare interests. (*Id.* ¶¶ 42–45). Plaintiffs have valid contracts with their timeshare-owner customers ("**Owners**") requiring Owners pay mortgages, maintenance fees, and property taxes. (*Id.* ¶¶ 36–45). Plaintiffs also enjoy a right of first refusal to purchase timeshare interests from Owners that wish to sell, transfer, assign, or hypothecate their interest. (*Id.* ¶ 38).

Defendant is an attorney who advertises to consumers—including Owners— "proprietary" services to cancel their ownership interests and be released from their payment obligations. (*Id.* ¶¶ 4, 25–28). Defendant advertises his services online and is referred clients from "Timeshare Exit Companies" that (like Defendant) solicit their timeshare cancellation services to Owners. (*Id.* ¶¶ 22–24, 46–47). Defendant advertises a specialty in "timeshare exit, cancellation[,] and relief for embattled timeshare owners no longer interested in paying the ever escalating fees." (Doc. 1-1). He claims to have developed techniques that cause timeshare companies to absolve timeshare owners of

---

[1] This account of the facts comes from the Complaint. (Doc. 1). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

their liabilities if they give up or transfer their ownership interest. (Doc. 1, ¶¶ 48–61). Defendant also offers a "100% MONEY BACK GUARANTEE." (Doc. 1-1).

Defendant's techniques for exiting timeshares begin with Owners paying Defendant and end with a legally and factually ineffective termination of their payment obligations to Plaintiffs. After Owners pay Defendant a "substantial up-front fee," Defendant instructs them to stop paying Plaintiffs. (Doc. 1, ¶¶ 62–70). Thereafter, Defendant sends generic representation letters to Plaintiffs: (i) alleging misrepresentations and abusive tactics, (ii) stating that Owners are no longer liable, and (iii) citing "irrelevant and/or inapplicable" legal bases for the changed status. (*Id.* ¶¶ 71, 73). Next, Defendant executes invalid deeds, on the Owners' behalves, supposedly conveying their interests either back to Plaintiffs or to a straw person. (*Id.* ¶¶ 76–92). These deeds fail to convey any interest, though; the conveyances to Plaintiffs fraudulently represent that Plaintiffs willingly accept transfer, and the strawman deeds violate Plaintiffs' right of first refusal. (*Id.* ¶¶ 81–82, 88–89). Thus, the Owners are not relieved of their financial obligations to Plaintiffs by Defendant's services, and so they next default.

The Complaint avers seven Counts arising out of this conduct: false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); declaratory judgment (Count II); violation of Fla. Stat. § 817.535 (Count III); violation of Fla. Stat. § 721.17 (Count IV); tortious interference with existing contracts (Count V); violation of Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**"), Fla. Stat. § 501.201 *et seq.* (Count VI); violation of Nevada Deceptive Trade Practices Act (Count VII). Defendant moves to dismiss. (Doc. 23).

## II. STANDARD OF REVIEW

To survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam). In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 67.

## III. DISCUSSION

### A. Count I: Lanham Act

Defendant moves to dismiss Count I for: (i) failure to allege "false or misleading" statements, and (ii) failure to allege cognizable injury to Plaintiffs. (Doc. 24, pp. 4–7). To survive a Rule 12(b)(6) motion, a Lanham Act claim must plead:

> (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff]

4

has been, or likely will be, injured as a result of the false or misleading statement.

*Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012). Accepting the Complaint's allegations as true, Plaintiffs adequately alleged that Defendant's advertisements were false or misleading—Defendant promises to absolve Owners of their financial obligations to Plaintiffs and he knows he cannot deliver. *See Diamond Resorts Int'l v. Aaronson,* No. 6:17-cv-1394-Orl-37DCI, 2018 WL 735627, at *3 (M.D. Fla. Jan. 26, 2018). Though Defendant quibbles over whether the "guarantee" is false (since Defendant offers a money-back, not a success, guarantee) and points to language from the website stating that success is not assured, the Complaint contains numerous examples of statements that fit the "false or misleading" bill. (*See, e.g.,* Doc. 1, ¶¶ 48–61; Doc. 1-2).

Defendant also contends the Complaint does not allege injury. (Doc. 23, pp. 6–7). The Court disagrees. The Complaint avers Defendant's advertising statements caused Owners to stop paying their financial obligations to Plaintiffs; these facts easily satisfy the injury requirement at this stage. *See Westgate Resorts, Ltd. v. Reed Hein & Assocs.*, No. 6:18-cv-1088-Orl-31DCI, 2018 WL 5279156, at *10 (M.D. Fla. Oct. 24, 2018).

### B. Count II: Declaratory Judgment

Count II seeks a judicial declaration that: (i) the deeds prepared by Defendant purporting to transfer Owners' timeshare interests to third parties or back to Plaintiffs are invalid and of no legal effect; and (ii) the Owners continue to own their timeshare interests and remain liable for their contractual obligations. (Doc. 1, ¶¶ 126–134). Defendant moves to dismiss on several grounds. (Doc. 23). Count II will be dismissed.

Where there is "a case of actual controversy," the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "**Act**"), affords discretion[2] to "any court of the United States . . . [to] declare the rights and other legal relations of any interested party seeking such declaration." A case or controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995) (citation omitted).

Defendant first advances a ripeness challenge, arguing that Plaintiffs' declaratory judgment claim asks the Court to "adjudicate future, hypothetical circumstances and speculative injury." (Doc. 23, pp. 7–8). Here, Plaintiffs seek declarations as to their contractual rights with respect to a class of Owners—the size and scope of which remains unknown (Doc. 1, ¶ 100)—that employed Defendant's services. Importantly, none of the Owners are parties to this lawsuit. A decision by the Court declaring Plaintiffs' rights against not only Defendant but also a class of Owners of unknown size would violate the actual controversy requirement.[3] Such relief is problematic because the Owners are

---

[2] Though the Act vests federal courts with discretion and "competence to make a declaration of rights[,] it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005)

[3] Plaintiffs' answer to this argument is unhelpful. Plaintiffs say this Court rejected "that very argument" at least twice before. (Doc. 24, p. 9). The cases Plaintiffs cite in support are inapposite. In *Reed Hein & Associates*, 2018 WL 5279156, the court held that the complaint need not "identify specific contracts with which [the defendants] allegedly interfered" to state a plausible tortious interference claim. *Id.* at *4. This authority is a far cry from authorizing the Court declare hundreds or thousands of unknown deeds invalid pursuant to the Declaratory Judgment Act. Plaintiffs' citation to *Westgate Resorts, LTD. v. U.S. Consumer Attorneys, P.A.*, No. 6:18-cv-359-Orl-31TBS, 2018 WL 4898947, at *5 (M.D. Fla. Oct. 9, 2018), misses the mark for the same reason.

6

absent and Plaintiffs have not alleged a sufficiently immediate controversy involving the defective deeds to warrant a declaratory judgment.[4] See *GTE Directories*, 67 F.3d at 1567. Accordingly, Count II is due to be dismissed.

### C. Count III: Fla. Stat. § 817.535

The Complaint next alleges a claim, on behalf of three Florida-based Plaintiffs, for violation of Fla. Stat. § 817.535. (Doc. 1, ¶¶ 126–134). Plaintiffs cite § 817.535(2)(a), which provides:

> A person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084

Further, § 817.535(8)(a) grants a civil cause of action to "[a]ny person adversely affected" by a false, fictitious, or fraudulent instrument filed in an official record. Plaintiffs cite to this section, claiming that Defendant is liable for directing Owners to file fraudulent deeds in the record, adversely affecting Plaintiffs. (Doc. 1, ¶¶ 129–134).

Defendant moves to dismiss Count III. (Doc. 23, pp. 9–13). Defendant argues that Plaintiffs lack standing to bring a § 817.535(8) claim because the statute "requires that the aggrieved party be a person other than the person to whom the document purports to grant a favorable interest." (Doc. 23, p. 10). Defendant also cites a decision from the Southern District of Florida for the proposition that "[a] random third-party" lacks standing to bring a claim. (*Id.*). This argument is unpersuasive. Under the plain language of the

---

[4] To be sure, the Court does not doubt that Defendant's alleged conduct causes immediate harm to Plaintiffs in the form of diverted payments. But here, the remedy does not match the harm. The relief requested exclusively affects the Owners' rights in their absence and before a case or controversy has arisen between Plaintiffs and the Owners.

7

statute, Plaintiffs have standing to bring Count III because they were "adversely affected" by allegedly fraudulent deeds recorded by Defendant in the official record. Plaintiffs are not "random third parties" to Defendant's attempted conveyances, rather they suffered direct financial harm caused by Defendant's direction that Owners file fraudulent deeds in the record. At least at this stage, Count III may proceed.[5]

### D. Count V: Tortious Interference

Count V brings claims for tortious interference with existing contracts. (Doc. 1, ¶¶ 143–53). To plead such a claim, a plaintiff must allege: "(1) [t]he existence of a contract, (2) [t]he defendant's knowledge of the contract, (3) [t]he defendant's intentional procurement of the contract's breach, (4) [a]bsence of any justification or privilege, and (5) [d]amages resulting from the breach." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (alteration accepted).

Defendant makes several arguments for dismissal of Count V. First, he asserts this Count is deficient because it does not identify the contracts at issue. (Doc. 23, p. 13). Specific contract identification, however, is unnecessary at the pleading stage. *See U.S. Consumer Attorneys*, 2018 WL 4898947, at *5. Second, Defendant asserts that the Complaint does not establish the representations from Defendant's websites induced a breach. (Doc. 23, pp. 13–14). This argument likewise fails because the Complaint alleges additional conduct by Defendant that caused breaches of contract. (*See, e.g.*, Doc. 1, ¶¶ 64–65, 71–75 (alleging Defendant directed Owners to breach their valid contracts with Plaintiffs and advising Owners they are released from their contractual obligations to

---

[5] Defendant makes two additional arguments for dismissal of Count III. (Doc. 23, pp. 11–13). Neither raise legitimate grounds for dismissal, nor do they merit discussion.

Plaintiffs)). Further, Defendant's implication that the Complaint must *establish* that Defendant's alleged conduct induced a breach flies in the face of the plausibility standard applicable to motions to dismiss. Third, Defendant argues that it may not be liable as a mere agent. (Doc. 23, p. 14). However, tortious interference liability may be imposed on an agent "'where the agent acts solely with ulterior purposes and the advice is not in the principal's best interest,' or where 'improper methods' are employed." *Orange Lake Country Club, Inc. v. Reed Hein & Assocs.*, 367 F. Supp. 3d 1360, 1369–70 (M.D. Fla. 2019) (first quoting *Scussel v. Balter*, 386 So. 2d 1227, 1228–29 (Fla. 3d DCA 1980), then quoting *KMS Rest. Corp. v. Wendy's Int'l*, 361 F.3d 1321, 1327 (11th Cir. 2004)). The Complaint avers ample facts to form a basis for such agency liability against Defendant. Fourth and finally, Defendant's contention that his conduct is wholly shielded from tortious interference liability per the *Noerr-Pennington* doctrine is wrong. *See Orange Lake Country Club*, 367 F. Supp. 3d at 1370–72.

### E. Counts VI and VII: Unfair Trade Practices

Counts VI and VII bring claims under Florida's and Nevada's deceptive (and unfair) trade practices acts ("**FDUTPA**" and **"NDTPA**", respectively). (Doc. 1, ¶¶ 154–81). Defendant moves to dismiss both claims.

A plaintiff must plead three elements to make out a FDUTPA claim: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015). Defendant maintains that Count VI fails to allege harm since the alleged misrepresentations "would have caused harm, if at all, to the consumers they targeted [the timeshare owners] rather than the Plaintiffs." (Doc. 23, pp. 15–16 (quoting *Westgate*

9

*Resorts, Ltd. v. Castle Law Grp., P.C.*, No. 6:17–cv–1063–Orl–31DCI, 2017 WL 6512552, at *5 (M.D. Fla. Dec. 20, 2018)). The Court disagrees with *Castle Law Group*'s holding on this point and finds more persuasive *Westgate Resorts, LTD. v. Sussman*, No. 6:17-cv-1467-Orl-37DCI, Doc. 40 (M.D. Fla. Jan. 11, 2018), wherein the court found that a complaint alleging similar facts stated a plausible FDUTPA claim (against the same Defendant, Sussman). *See id.* at pp. 5–6.

Finally, Defendant moves to dismiss the NDTPA claim, first asserting that Plaintiffs lack standing to bring such a claim, then arguing that the claim is pled too generically, and finally that an exclusion applies. (Doc. 23, pp. 16–18). Contrary to Defendant's arguments, Plaintiffs possess standing to bring Count VII because they were "directly harmed" by Defendant's allegedly deceptive business practices. *See Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1152–53 (9th Cir. 2011). Further, the Complaint is replete with detailed factual allegations that satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements. And last, Defendant's claim that the NDTPA claim is barred by an exception is premature at the pleading stage.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Mitchell Reed Sussman's Motion to Dismiss (Doc. 23) is **GRANTED IN PART AND DENIED IN PART**.
    a. Count II is **DISMISSED**.
    b. In all other respects, the motion is **DENIED**.
2. Defendant shall answer the Complaint on or before Friday, July 12, 2019.

**DONE AND ORDERED** in Orlando, Florida on June 28, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties